# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1254

_____

Robert Young,

        Appellant,

    v.

Warner-Jenkinson Company, Inc.,

        Appellee.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Missouri.
\*
\*
\*

_____

Submitted:  June 12, 1998

Filed:  August 24, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and DOTY,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Robert Young appeals from the district court's entry of summary judgment in favor of his former employer, Warner-Jenkinson Company, Inc. (Warner-Jenkinson). Young alleges that Warner-Jenkinson terminated him because of his disability in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (1995 & Supp. 1998), and the Missouri Human Rights Act (MHRA), Mo. Rev.

_____

[1]The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

Stat. §§ 213.010-213.137 (1996 & Supp. 1998). We reverse and remand for further proceedings.[2]

## I.

Viewed in the light most favorable to Young, the record reveals the following facts. Young, an African-American male, began working as a temporary full-time employee in the maintenance department of Warner-Jenkinson's St. Louis plant on November 1, 1993. Warner-Jenkinson estimated that Young's employment would last approximately six months. On March 17, 1994, Young suffered a severe work-related injury that ultimately led to the amputation of three-quarters of his left foot. Following his injury, Young underwent extensive physical rehabilitation and was unable to work for a substantial period of time. He was able to return to work with the aid of a prosthetic device on October 31, 1994, and was subsequently given permission to work without restrictions on March 28, 1995.

On December 8, 1995, Ed Crumer, Warner-Jenkinson's manager of employee relations, met with Young and informed him of the company's decision to terminate his employment. During the course of this meeting, Crumer told Young that his job performance had been deficient in numerous respects. Crumer also made reference to a memorandum authored by Dan Lauff, Warner-Jenkinson's plant manager, which purportedly detailed Young's performance deficiencies. Four days later, Crumer provided Young with a condensed version of Lauff's memorandum, which read, in pertinent part:

---

[2]In light of our holding, Young's motion to strike portions of Warner-Jenkinson's brief is denied as moot.

* You missed 30.5 hours since reporting to the Dispersion area on August 19, 1995. The most recent eight (8) hour occurrence was the result of a legal incarceration.

* You were responsible for a significant product spill during the week of November 27, 1995, that was a result of simple carelessness. The incident occurred when you took possession of a material mover while it was being used to elevate a tank and fill a drum. The incident demonstrated a lack of attention to the job.

* You did not work well with the experienced and very qualified full Grade 3 operator that you were assigned to work with.

Appellant's Appendix (A.A.) at 252.

Shortly after his dismissal, Young filed complaints with the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR) alleging that Warner-Jenkinson had discriminated against him on account of his disability and his race. John Shelton, a human rights officer with the MCHR's Early Resolution Unit, contacted Warner-Jenkinson in an attempt to resolve the dispute through an early resolution process. In response to this inquiry, Shelton received a letter from Warner-Jenkinson's parent company, Universal Foods Corporation. The letter stated that Young had been terminated not because of performance deficiencies but because of a lack of available work. The letter confirmed that Crumer had discussed certain deficiencies with Young at the time of his dismissal, but maintained that these deficiencies were unrelated to the ultimate decision to terminate. See id. at 276-77.[3]

---

[3]Warner-Jenkinson still insists that Young's dismissal was for lack of available work and had nothing to do with any alleged performance deficiencies. Although this position is supported by Crumer's deposition testimony, testimony elicited during Lauff's deposition paints a different picture. Lauff testified as follows:

Young then initiated the present action, alleging that Warner-Jenkinson had discriminated against him on the basis of his disability in violation of the ADA and the MHRA. Young further alleged that Warner-Jenkinson had discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Finally, Young claimed that Warner-Jenkinson violated Mo. Rev. Stat. § 287.780 by retaliating against him for filing and pursuing a workers' compensation claim. The district court entered summary judgment for Warner-Jenkinson with respect to all claims, and Young now appeals.

## II.

Young has apparently abandoned his race discrimination and retaliation claims. Thus, the sole issue on appeal is whether the district court properly granted summary

---

Q. So he was fired, to your understanding. Correct?

A. Correct.

Q. And Plaintiff's Exhibit 6, what is that?

A. This is a memo from myself to Mr. Ed Crumer just detailing the items we just discussed of the attendance. Basically it's a memo recommending releasing Robert Young from Warner-Jenkinson.

Q. So Plaintiff's Exhibit 6 is a memo authored by you setting out the problems with Bob's performance and recommending that he be fired. Correct?

A. That's correct.

A.A. at 167-68.

judgment to Warner-Jenkinson on Young's ADA claim.[4]   Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a); see also Downs v. Hawkeye Health Services, Inc., 1998 WL 348201 at *1 (8th Cir. July 1, 1998); Moore v. Payless Shoe Source, Inc., 139 F.3d 1210, 1212 (8th Cir. 1998).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

We review a grant of summary judgment de novo, applying the same standards as those employed by the district court.  See Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).  Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See id.; Fed. R. Civ. P. 56(c).  While a party moving for summary judgment carries the burden of demonstrating the absence of any genuine issue of material fact, a nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.  See Rose-Maston, 133 F.3d at 1107; Thomas v. Runyon, 108 F.3d 957, 959 (8th Cir. 1997); Ruby v. Springfield R-12 Pub. Sch. Dist., 76 F.3d 909, 911 (8th Cir. 1996).

Because Young has not put forth direct evidence of discrimination, his ADA claim is analyzed under the burden-shifting framework set forth in McDonnell Douglas and its progeny.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-15 (1983); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981);

_____

[4]Young's disability discrimination claim also alleges violations of the MHRA. His claims under the ADA and the MHRA are governed by the same standards.  See Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1164 n.5 (8th Cir. 1998).

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under this framework, a discrimination plaintiff must first establish a prima facie case of discrimination. See Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998). If he satisfies this initial burden, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. See Rose-Maston, 133 F.3d at 1107. Once the defendant has advanced a nondiscriminatory reason, the presumption disappears and the plaintiff bears the burden of demonstrating that the employer's proffered reason is merely a pretext for intentional discrimination. See id. The plaintiff retains at all times the ultimate burden of proving that the adverse employment action was motivated by intentional discrimination. See id. at 1107-08.

In order to establish a prima facie case of discrimination under the ADA, Young must establish the following: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without accommodation; and (3) he suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. See Mathews, 143 F.3d at 1164; Christopher, 137 F.3d at 1072. Warner-Jenkinson concedes that Young has satisfied the first two elements, but contends that Young has presented no evidence to satisfy the third. Specifically, Warner-Jenkinson argues that because Young has produced no evidence indicating that he was treated any differently than anyone else, he has not demonstrated circumstances from which the existence of unlawful discrimination may be inferred.

We disagree. In Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir. 1996), cert. denied, 117 S. Ct. 274 (1996), we noted that "[a]n inference of discrimination may be raised by evidence that a plaintiff was replaced by or treated less favorably than similarly situated employees who are not in the plaintiff's protected class." It does not follow, however, that evidence of disparate treatment is the exclusive means by which a plaintiff may establish an inference of discrimination. See Miners v. Cargill

-6-

Communications, Inc., 113 F.3d 820, 824 n.7 (8th Cir. 1997), cert. denied, 118 S. Ct. 441 (1997) ("[a]lthough . . . disparate treatment commonly gives rise to an inference of discrimination, it cannot be the only means of demonstrating unlawful discrimination"). In McDonnell Douglas, the Supreme Court recognized that the prima facie case will necessarily vary in different factual situations. 411 U.S. at 802 n.13. We have recognized, as well, that the proof necessary to establish a prima facie case in discrimination cases is "not inflexible" and "varies somewhat with the specific facts of each case." Hindman v. Transkrit Corp., 145 F.3d 986, 990-91 (8th Cir. 1998).[5]

Furthermore, it is well-established that the threshold of proof necessary to establish a prima facie case is minimal. See, e.g., Rose-Maston, 133 F.3d at 1109-10; Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994). "The prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue" of discriminatory action. Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995); see also Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994).

We conclude that Young has produced evidence sufficient to raise an inference of discrimination. Although Warner-Jenkinson now insists that it terminated him solely due to lack of work, Young has produced evidence indicating that the company offered a different explanation at the time of his dismissal. The memorandum Young received from Crumer outlined three specific areas in which Young's performance had allegedly been deficient. This document can reasonably be read as setting forth reasons for Young's dismissal that are inconsistent with those currently advanced by Warner-

---

[5]We have also noted that the phrase "prima facie case" is "intended merely to be a legally mandatory, rebuttable presumption. Its purpose in the burden-shifting scheme is 'to sharpen the inquiry into the elusive factual question of intentional discrimination.'" Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 n.6 (8th Cir. 1996) (quoting Burdine, 450 U.S. at 255 n.8).

Jenkinson. Lauff's deposition testimony is similarly contrary to the position now maintained by Warner-Jenkinson. The ultimate significance of the shift in Warner-Jenkinson's position is a matter of dispute, but the company's inconsistent explanations are enough to support an inference of discriminatory treatment.

The prima facie case having been established, the burden was upon Warner-Jenkinson to articulate one or more legitimate, nondiscriminatory reasons for the adverse employment action. However inconsistent, Warner-Jenkinson's proffered explanations were sufficient to shift to Young the burden of demonstrating that the proffered reasons were but pretext for unlawful discrimination. As we explained in Rothmeier:

> [T]he rule in this Circuit is that [a discrimination] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [the plaintiff's disability] was a determinative factor in the adverse employment decision. The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffice[s] to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [disability].

85 F.3d at 1336-37. Thus, to survive a motion for summary judgment, a plaintiff must: (1) present evidence creating a fact issue as to whether the employer's proffered reasons are pretextual; and (2) present evidence that supports a reasonable inference of unlawful discrimination. See id.

We conclude that Young has offered evidence sufficient to create a fact issue regarding the pretextual nature of Warner-Jenkinson's proffered reason for his dismissal. Young testified in his deposition that at the time he was dismissed, Warner-Jenkinson made no mention of any lack of available work, but instead explained that Young's performance had been inadequate. Lauff's memorandum outlining various deficiencies indicated to Young that his alleged performance deficiencies were related to his discharge. This inconsistency in the reasons advanced by Warner-Jenkinson is sufficient to create a genuine fact issue as to whether the reason proffered by Warner-Jenkinson was the true reason for Young's dismissal. See Kobrin v. University of Minnesota, 34 F.3d 698, 703 (8th Cir. 1994) ("[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext").

Nevertheless, Rothmeier makes it clear that evidence of pretext, standing alone, does not preclude summary judgment. 85 F.3d at 1336-37. Instead, Young must also satisfy the second prong of the Rothmeier test; that is, he must present evidence that "creates a reasonable inference that [his disability] was a determinative factor in the adverse employment decision." Id. Emphasizing this language, Warner-Jenkinson argues that, even if Young has presented evidence of pretext, he has failed to produce additional evidence from which one could reasonably infer that the true reason for his dismissal was discriminatory.

As we noted in Rothmeier, however, an inference of discrimination may sometimes arise "without additional evidence where the overall strength of the prima facie case and the evidence of pretext 'suffice[s] to show intentional discrimination.'" Id. at 1337. As we explained in Ryther v. KARE 11, 108 F.3d 832 (8th Cir. 1997) (en banc), cert. denied, 117 S. Ct. 2510 (1997):

> [W]hen the employer produces a nondiscriminatory reason for its actions, the prima facie case no longer creates a legal presumption of unlawful discrimination. The *elements* of the prima facie case remain, however,

and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of . . . discrimination.

Id. at 837.

Young has demonstrated that the company's current explanation is at odds with that which Young was told at the time of his dismissal. This evidence not only supports an inference that Warner-Jenkinson has abandoned its initial stance, but also supports a reasonable inference that the company's current explanation is contrived.

Moreover, Young has presented additional evidence that Warner-Jenkinson's initial explanation was dubious. As noted above, the memorandum given to Young at the time of his discharge identified the following performance deficiencies: (1) Young missed approximately thirty hours of work between August and December of 1995, and the most recent eight hour period was the result of a "legal incarceration"; (2) his carelessness on the job resulted in a "significant product spill"; and (3) he did not work well with the operator to whom he was assigned. With respect to each of these alleged areas of deficiency, Young has produced evidence indicating that Warner-Jenkinson's characterizations were at best carelessly inaccurate and at worst willfully exaggerated.

Warner-Jenkinson's depiction of Young's absenteeism is illustrative of this point. The evidence demonstrates that Young's recent eight-hour absence was the result of his being subpoenaed to testify in court. Thus, he clearly was not absent due to a "legal incarceration." In addition, Warner-Jenkinson's employee policy manual

-10-

indicates that such an absence is not to be counted against an employee.[6]  Moreover, the fact that Warner-Jenkinson may have deviated from its policies, when coupled with the fact that the company mischaracterized Young's most recent absence in a manner giving rise to negative connotations, lends support to an inference of improper motive.

Young has also offered evidence to refute the other reasons set forth in the memorandum.  Young's immediate supervisor and Crumer both testified that the November product spill was "insignificant," thus calling into question the legitimacy of the memorandum's reference to a "significant product spill."  Similarly, the memorandum's conclusion that Young did not work well with the operator with whom he was assigned to work is contradicted by the testimony of the operator himself.

We conclude that a trier of fact could conclude from the foregoing evidence that Young's discharge was due neither to performance deficiencies, as Warner-Jenkinson initially told him, nor to lack of available work, as the company now claims.  When an employer has offered different explanations for an adverse employment action and when evidence has been presented that would allow a reasonable trier of fact to disbelieve each explanation, the trier of fact may reasonably infer that the employer is hiding something -- that is, that the true explanation is unlawful discrimination.  As the Supreme Court has observed:

> [W]e know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting.  Thus, when all legitimate reasons for

---

[6]The policies contained in this manual also provide that employee absenteeism may result in disciplinary action only if an employee is absent for more than forty hours during a twelve month period.  Warner-Jenkinson does not contend that this is the case, but instead asserts that the policy manual did not apply to Young because he was a temporary employee.  However, the company's former manager of human resources testified that the policy manual applies to all employees, including temporary ones.

rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as [disability].

Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); see also Ryther, 108 F.3d at 836. Thus, at least in some cases, a reasonable inference of discrimination may be drawn through a process of elimination. See Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 801 (8th Cir. 1994) ("evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty; it might serve the additional purpose of permitting an inference that . . . discrimination was a motivating factor in a plaintiff's termination"). We believe this to be such a case. Warner-Jenkinson's insistence on characterizing Young's dismissal as a layoff prompted by a lack of available work flies in the face of substantial evidence that Young was earlier told a completely different story. Although Warner-Jenkinson may be able to offer a plausible explanation for this apparent change in positions, as well as for the apparent mendacity of the alleged deficiencies in Young's job performance, these are matters to be decided at trial and not by summary judgment.[7]

---

[7]Warner-Jenkinson contends that Young's claim is foreclosed by our holding in Brandt v. Shop 'n Save Warehouse Foods, Inc., 108 F.3d 935 (8th Cir. 1997). There, we found that the employee's evidence of pretext failed to create an inference of discrimination. See id. at 938. We noted that the evidence contradicting the employer's proffered reason did not reasonably lend itself to an inference of discrimination, but rather supported only a finding that the employer was motivated by a different, nondiscriminatory (albeit nonlaudable) reason. See id. at 938-39. Thus, the employee's evidence of pretext was actually inconsistent with a reasonable inference of discrimination. See also Ryther, 108 F.3d at 837 ("evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of . . . discrimination"). In contrast, Young's evidence of pretext does not suggest the existence of another legitimate explanation and is therefore not inconsistent with a reasonable inference of discrimination.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.