**Charles H. SMITH, Plaintiff,**

v.

**HORTON INDUSTRIES, INC., Defendant.**

**No. Civ. 97–1026.**

United States District Court, D. South Dakota, Northern Division.

Sept. 2, 1998.

Thomas F. Burns, Watertown, SD, Philip W. Morgan, Britton, SD, for Plaintiff.

Daniel R. Fritz, Fritz, Hogan & Johnson, Aberdeen, SD, Neal T. Buethe, Briggs & Morgan, St. Paul, MN, for Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

## INTRODUCTION

[¶ 1] Plaintiff Charles H. Smith ("Smith") filed a complaint alleging a cause of action against his employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Defendant Horton Industries, Inc. ("Horton") filed a motion for summary judgment on the basis that (1) Smith failed to exhaust his administrative remedies, (2) Smith is not disabled under the ADA, (3) Smith cannot make a prima facie case because he cannot show that persons similarly situated were treated differently than Smith, (4) Horton can articulate a legitimate, nondiscriminatory reason for Smith's adverse employment action, and (5) Smith cannot demonstrate pretext. Horton has abandoned the failure to exhaust claim as Smith, subsequent to filing this action, received a right to sue letter, thus establishing the condition precedent to bringing an ADA action. *See* 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e–5, and *Sheppard v. Texas Department of Transportation*, 158 F.R.D. 592, 597 (E.D.Tex.1994) (the statutory requirement that plaintiff must receive a right to sue letter from the EEOC prior to instituting an action can be fulfilled after filing suit).

## DISCUSSION

[¶ 2] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c), *Donaho v. FMC Corporation*, 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995).

[¶ 3] In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. *Donaho v. FMC Corporation*, 74 F.3d 894, 897–898 (8th Cir.1996). The facts are thus set forth here based upon the record submitted with factual inconsistencies resolved in favor of the plaintiff.

[¶ 4] Smith's right arm was amputated just below the shoulder in 1970 as a result of a farm accident. He wears a prosthesis, an artificial arm, which has a clamp to act in the nature of a hand. Smith has been employed by Horton in Britton, South Dakota, since 1987. Prior to 1996, he worked in the tool room and was a so-called grade 4 employee. Grade 4 is the highest grade for the non-managerial personnel at Horton. At that

time, Smith was the only disabled employee at Horton.

[¶ 5] In April 1996, Horton restructured, reorganized, and instituted a reduction in force. It offered some employees early retirement, reassigned some employees, and terminated others. As a result of the restructuring, Smith's job was eliminated. Smith was reassigned to a "journal brackets" position and was reduced to grade 3, which resulted in a salary reduction. He had previously been on the day shift but was reassigned to the night shift. He subsequently obtained a position on the day shift but has not again obtained a grade 4 position. He did not apply for a grade 4 position on the night shift when, after he had left the night shift, Horton converted Smith's former grade 3 position to grade 4. Horton claims he has evidence that, had Smith applied for such position, he would have been selected. The parties have submitted no authority as to the legal effect, if any, of Smith's failure to apply for the grade 4 position which decision presumably stemmed from Smith's preference for the day shift.

[¶ 6] The ADA prohibits discrimination against a "qualified individual with a disability" in regard to job application, hiring, advancement, compensation and other terms and conditions of employment. 42 U.S.C. § 12112. To obtain relief under the ADA, a plaintiff must establish that he (1) is a person with a disability within the meaning of the ADA, (2) is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability. *Doane v. City of Omaha*, 115 F.3d 624, 626 (8th Cir.1997), cert. den. —— U.S. ——, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998). Defendant correctly points out that these elements must be established to make a prima facie case for employment discrimination and to survive a summary judgment motion. *See Moore v. Payless Shoe Source, Inc.*, 139 F.3d 1210, 1212 (8th Cir.1998), *Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1206 (8th Cir. 1997), and *Price v. S–B Power Tool*, 75 F.3d 362, 365 (8th Cir.), cert. den. —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996).

[¶ 7] The parties do not dispute that Smith is qualified to perform the essential functions of his job. Horton claims instead that Smith is not a person with a disability within the meaning of the ADA and that, although he suffered adverse employment action, Smith cannot make a prima facie showing that it was related to his disability.

### [¶ 8] I. Whether Smith Has Established A Prima Facie Case That He is a Person With a Disability.

[¶ 9] There is no question that Smith has no right arm. However, physical impairment, standing alone, is not necessarily a "disability." The ADA provides that the term "disability" under the Act means an individual with:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Smith claims he has an impairment that substantially limits one or more of the major life activities. Horton contends that, with Smith's prosthesis, he is not substantially limited in one or more major life activities. Smith testified at his deposition as follows:

Q. Is there anything that you can't do as part of your normal life because of your loss of an arm that hasn't been accommodated by your prosthetic device?

\*　　\*　　\*　　\*　　\*　　\*

A. There are some things but I—I don't know about them right offhand.

Q. Is there anything you can't do in your personal life, any personal care or something like that, buttoning or personal grooming or something that's restricted or affected by your prosthetic device?

A. No.

Q. Is there any recreational activity that you used to engage in, or you're currently engaged in that you think is substantially affected by your prosthetic or your loss of your arm?

A. No, not—not really.

Q. Okay. What about your ability to work, is there any aspect of your job that you cannot perform or it's more difficult for you to perform because of the loss of your arm and your prosthetic device?

A. I guess you'd have to say there are some things that are more difficult, because you got to do them with one hand instead of two....

Q. Is that a substantial factor in your ability to perform your job, or is it just minor inconveniences along the way?

A. I would say it's minor.

Smith submitted an affidavit in opposition to the motion for summary judgment wherein he states:

In my employment, in caring for myself and in manual tasks I am significantly restricted as to the condition, manner, and duration of performance as compared to the general population. In spite of the time that has elapsed since my amputation, I find that at my work at Horton Industries, I still cannot do certain things without accommodation....

As to my personal life, there are some things I cannot do, such as the following: I cannot butter bread. I cannot cut a piece of steak. I can bowl only with my left hand, but I was right-handed before my amputation. I have difficulty dressing myself. I have difficulty in mowing the lawn even with a power mower and could not do so with a hand mower. I cannot lift weights more than 25 pounds, because heavier weights take the strength of both arms. I cannot lift large objects even of lesser weight, because I do not have dexterity of both arms. I cannot move most furniture. I cannot type normally or as rapidly as the general population, because I use only one hand. I can write with my left hand, but it takes longer than normal, as I must go slowly in order to be legible. When most people take a bath, they put soap on the washcloth by rubbing the cloth and soap together. I do not use a washcloth for that reason. I tie my shoes and packages by a different process than normal, because my prosthesis has no dexterity. It is like trying to tie a knot with one hand while holding the string with a pliers.

I cannot shuffle cards. I cannot play catch with my grandchildren....

A party cannot claim, in an affidavit, a more favorable set of facts than what he has testified to as he later attempts to defeat a summary judgment motion. *Nelson v. WEB Water Dev. Assoc., Inc.*, 507 N.W.2d 691, 699 (S.D.1993). Thus, to the extent Smith's affidavit conflicts with his deposition testimony, it is disregarded.

[¶ 10] Smith contends that his prosthetic device should not be considered in the determination of whether his handicap substantially limits him in one or more major life activities. The Equal Employment Opportunity Commission ("EEOC"), the agency charged with issuing regulations to implement Title I of the ADA, 42 U.S.C. § 12116, issued regulations defining the term physical impairment to include an anatomical loss affecting the musculoskeletal system. 29 C.F.R. § 1630.2(h). Smith clearly has a physical impairment under that definition. The regulations define "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulations prescribe that the following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). The EEOC's regulations define "major life activities" as "functions such as caring for oneself, performing

manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

[¶ 11] The guidelines, however, are silent as to whether mitigating measures are to be considered in determining either whether an individual has an impairment or whether that impairment substantially limits a major life activity. The EEOC has spoken on the issue by publishing an Interpretive Guidance on Title I of the Americans with Disabilities Act. 29 C.F.R. § 1630, App. The interpretative guidelines direct that "the determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, *without regard to mitigating measures such as* medicines, or assistive or *prosthetic devices*." 29 C.F.R. § 1630, App. § 1630.2(j) (emphasis added). Likewise, the interpretive guidelines also direct that "the existence of an impairment is to be determined without regard to mitigating measures...." 29 C.F.R. § 1630, App. § 1630.2(h).

[¶ 12] The United States Court of Appeals for the Eighth Circuit has applied the interpretative guidelines in determining whether an individual is substantially limited in a major life activity. *Doane v. City of Omaha,* 115 F.3d at 627 (blindness in one eye). That holding was criticized by the United States Court of Appeals for the Tenth Circuit in *Sutton v. United Air Lines, Inc.,* 130 F.3d 893 (10th Cir.1997). The Tenth Circuit concluded in that case that "while the EEOC's Interpretative Guidance may be entitled to some consideration in our analysis, it does not carry the force of law and is not entitled to any special deference under Chevron." [1] *Id.* at 899 n. 3. The *Sutton* court applied the EEOC's Interpretative Guidance as to whether Sutton had an impairment because it "is reasonable and consistent with the statutory mandates themselves." *Id.* at 899. However, the Tenth Circuit rejected the Interpretative Guidance as to whether the impairment substantially limits a major life activity, holding that the Interpretative Guidance "is in direct conflict with the plain language of the ADA.... In making disability determinations, we are concerned with

whether the impairment affects the individual in fact, not whether it would hypothetically affect the individual without the use of corrective measures." *Id.* at 902 (plaintiffs' eyesight is correctable to 20/20 with glasses or contact lenses). The Fifth and Sixth Circuits have also rejected the EEOC's Interpretative Guidance. *See Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 n. 3 (5th Cir. 1996) (dicta) (cancer was successfully treated) and *Gilday v. Mecosta County,* 124 F.3d 760, 767 (6th Cir.1997) (non-insulin-dependent diabetes mellitus was controlled with medication). The majority of the circuits, however, have, like the Eighth Circuit, followed the EEOC's guidance and concluded that mitigating measures should not be considered in determining whether an impairment substantially limits a major life activity. *See Arnold v. United Parcel Service, Inc.,* 136 F.3d 854, 866 (1st Cir.1998) (insulin-dependent diabetes mellitus was controlled with medication), *Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d 933, 936–937 (3rd Cir.1997) (epilepsy), *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995) (legally blind in one eye), *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996) (psychiatrically disabled due to work related stress), and *Harris v. H & W Contracting Co.,* 102 F.3d 516, 520–521 (11th Cir.1996) (Graves' disease).

[¶ 13] Although not specifically discussed by the Eighth Circuit in *Doane,* that decision is supported by the legislative history of the ADA.

An examination of that history reveals Congress' intent to exclude mitigating measures from assessments of disability. One congressional committee noted, "[P]ersons with impairments, such as epilepsy or diabetes, which substantially limit a major life activity are covered under the first prong of disability, even if the effects of the impairment are controlled by medication." H.R.REP. NO. 101–485(II), at 52 (1990) (emphasis added), reprinted in 1990 U.S.C.C.A.N. 334; see also S.REP. NO. 101–116, at 23 (1989) (committee report stating "whether a person has a disability

---

1. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), held that the

courts must defer to the EEOC's regulatory definition unless it is "arbitrary, capricious, or manifestly contrary to the statute."

should be assessed without regard to the availability of mitigating measures...").
Thus, the ADA's legislative history bolsters the interpretation offered by the EEOC's guidelines. That is, disabled individuals who control their disability with medication may still invoke the protections of the ADA.
*Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d at 937. This Court is obviously bound by the law in the Eighth Circuit. Were this Court "writing on a clean slate," the Court would adopt the rationale of the Tenth Circuit in *Sutton.* By way of personal example, I cannot read at all, hunt successfully or play tennis successfully without the use of eye wear. It would seem to be unfair, if you will, to conclude that uncorrected vision due to the aging process would translate to a disability within the meaning of the ADA. That seems, however, to be the import of *Doane.* The Court did there observe, however: "We must consider each situation on a case by case basis. Doane's vision impairment stems not merely from overall poor eyesight but from total blindness in one eye due to glaucoma, which significantly restricts the manner in which *Doane* performs the major life activity of seeing." *Id.* at 627. An individual without one arm is substantially limited in one or more major life activities when he is not using a prosthetic device. In addition, considering the situation of the plaintiff in this case, Smith has established a prima facie case that he is a person with a disability within the meaning of the ADA.

[¶ 14]  **II. Whether Smith Has Established A Prima Facie Case That He Suffered An Adverse Employment Action Because of His Disability.**

[¶ 15] There is no dispute that Smith is qualified to perform the essential functions of his job, either with or without reasonable accommodation. The remaining element that Smith must establish to obtain relief under the ADA is that he suffered an adverse employment action because of his disability. *Doane,* 115 F.3d at 626. "It is well-established that the threshold of proof necessary to establish a prima facie case is minimal." *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d 1018, 1020 (8th Cir.1988). Smith need only show that "he suffered an adverse employment action under circum-

stances from which an inference of unlawful discrimination arises." *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d at 1020. "An inference of discrimination may be raised by evidence that a plaintiff was replaced by or treated less favorably than similarly situated employees who are not in the plaintiff's protected class." *Id.,* (quoting *Price v. S–B Power Tool,* 75 F.3d at 365).

[¶ 16] Smith has responded to the motion for summary judgment with evidence that, prior to the reduction in force, he was classified as a Machinist IV, i.e. he received pay grade 4. He was moved from a tool room position (because those jobs were eliminated) to "journal brackets," reduced to Machinist III status with a pay reduction to grade 3, and placed on the night shift. The job he was reassigned to was formerly held by a non-disabled grade 4 employee. Horton claims this person had more set-up work to do. In theory, if not in practice, grade 4 machinists do more set-up work than do grade 3 machinists. Smith later obtained a position on the day shift. The non-disabled employee who took over his journal bracket position on the night shift was assigned pay grade 4. Smith has established a prima facie case by showing an inference of discrimination.

[¶ 17] A prima facie case having been established, the burden is upon Horton to articulate one or more legitimate, nondiscriminatory reasons for the adverse employment action. *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d at 1021. Horton sets forth an abundance of facts which show that, as part of the reorganization, all Horton employees were evaluated and ranked according to performance ability, need for the position, productivity, and length of service. Horton also claims Smith's predecessor on the night shift was designated a Machinist IV because he had more set up experience. Horton claims Smith's successor on the night shift was designated a Machinist IV due to an upturn in production in the plant which resulted in the need for another night shift Machinist IV in Smith's old work cell. Horton contends that Smith has no evidence that either his predecessor or his successor performed the same duties Smith did at that job.

Smith argues that he has such evidence. Horton contends it has shown that these two employees were not similarly situated to Smith. Horton has articulated, barely, a legitimate nondiscriminatory reason for its action in designating Smith a Machinist III while his predecessor and successor were designated Machinist IV.[2]

[¶ 18] However weak, Horton's proffered explanations are sufficient to shift to Smith the burden of demonstrating that the proffered reasons were but a pretext for unlawful discrimination. *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d at 1021.

> [T]he rule in this Circuit is that [a discrimination] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [the plaintiff's disability] was a determinative factor in the adverse employment decision. The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffice[s] to show intentional discrimination." The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff because of the plaintiff's [disability].

*Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d at 1020, (quoting *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1336–37 (8th Cir.1996))[3]. "Thus, to survive a motion for summary judgment, a plaintiff must: (1) present evidence creating a fact issue as to whether the employer's proffered reasons are pretextual; and (2) present evidence that supports a reasonable inference of unlawful discrimination." *Id.*

**2.** The credibility of Horton's nondiscriminatory reasons is for the jury.

**3.** *Rothmeier* involved a claim under the Age Discrimination in Employment Act ("ADEA"). The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668

[¶ 19] Smith, in response to Horton's motion for summary judgment and evidence in support of its statement of facts, has offered the affidavits of two Horton employees who claim they know that Smith ran and set up the same machines that Smith's predecessor and successor ran, although the non-disabled employees were designated as Machinists IV. Smith has presented evidence which creates a factual issue as to whether Horton's proffered reason that Smith was paid a Machinist III salary was pretextual. Smith has presented evidence showing that Smith, the employee he replaced, and his successor performed the same work but were paid a different salary and that the only difference among those three employees is the disability of Smith. This evidence supports a reasonable inference that the plaintiff's disability was a determinative factor in the adverse employment decision.

### ORDER

[¶ 20] The motion for summary judgment, Doc. 19, should be and is denied.

[¶ 21] Dated this 1st day of September, 1998.

(1973), for Title VII discrimination cases also governs age discrimination claims under the ADEA, *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1316 (8th Cir.1996), and employment discrimination claims under the ADA, *Young v. Warner–Jenkinson,* 152 F.3d at 1020. Therefore, cases involving Title VII and the ADEA are instructive.