# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2113

_____

Andrea Olsen

*Plaintiff - Appellant*

v.

Capital Region Medical Center; Robert Mazur

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 15, 2012
Filed: May 7, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Andrea Olsen was employed by the Capital Regional Medical Center (CRMC) as a mammography technician. Olsen, who has epilepsy, suffered numerous seizures at work. After Olsen was unable to reduce her seizures with CRMC's office accommodations, CRMC placed Olsen on unpaid administrative leave. CRMC offered to reinstate Olsen after learning Olsen was taking medicine that successfully

controlled the seizures. Olsen refused this offer and CRMC eventually terminated her. At one point prior to placing Olsen on administrative leave, CRMC hired an additional technician, who was younger than Olsen, to supplement the staff. Olsen filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC), alleging violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the Missouri Human Rights Act (MHRA) based on CRMC's placement of her on administrative leave following the work-related epileptic seizures and the hiring of a younger technician. The district court[1] granted summary judgment on all claims in CRMC's favor. Olsen timely appealed. We affirm.

## I. *Background*

Olsen, who is over 40, was hired as a Certified Mammography Technologist for CRMC in 1993. In this position, she performed mammography examinations, where she positioned patients in the machine, controlled the table movement, and collected specimens. CRMC required Olsen to follow departmental protocols and recommended safety standards while she operated the radiographic equipment and performed radiographic procedures of the breast. CRMC also expected Olsen to tend to the patients' physical and psychological needs as well as manage paperwork, including registration, billing, and records.

Olsen experienced epileptic seizures unpredictably. Olsen's seizures generally caused her to lose orientation and muscle control, resulting in falls that produced injuries. Olsen's first seizure at CRMC occurred in 2004. In 2007, Olsen suffered another seizure while she was in the back office of the mammography room. During this seizure, Olsen hit her head on the counter and bit her tongue and cheek. After Olsen experienced three more seizures at work, CRMC placed Olsen on paid

---

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

administrative leave in August 2008. While on leave, Olsen consulted a neurologist, who submitted a letter approving her return to work. Olsen resumed her duties. In November 2008, Olsen experienced a seizure causing her to fall and resulting in a head wound requiring staples. Subsequently, CRMC determined that the risk to patients and to Olsen, herself, was too great and again placed her on paid administrative leave. CRMC made a number of accommodations in an effort to eliminate environmental triggers to Olsen's seizures, including, removing mold; investigating cleaning agent ingredients; having other technicians handle patients, who wore heavy perfumes; installing anti-glare filters on lights; eliminating scrolling from computers; covering x-ray films to reduce brightness; permitting Olsen to wear sunglasses; and educating Olsen's co-workers regarding epilepsy and how to treat someone who is seizing. Olsen eventually returned to work but continued to suffer seizures despite CRMC's accommodations.

Olsen suffered 14 seizures at CRMC between June 2008 and August 2010. Some seizures resulted in injuries to Olsen, including cuts to her head and tongue, injuries to her face, and a stoppage of breathing. Two of these seizures occurred in the presence of patients receiving mammograms. Olsen was positioning a patient in the mammography machine when one seizure occurred. This patient complained to CRMC, expressing a concern for patient safety and stating that she was complaining so that "no one else having a mammo[gram] will have to go thru [sic] what I just went thru [sic]. Please make certain this safety issue will be taken [c]are of."

In a report following Olsen experiencing a seizure in March 2010, Olsen's supervisor, Kristy Trent, stated that the patient under Olsen's care during the seizure "seemed very shaken." The first employee, Kari L. Binder, to enter the room following the March 2010 seizure stated that the patient said:

[a]ccording to the patient, [Olsen] was positioning [the patient] for MLO, [Olsen] turned her head like she was distracted but never turned

-3-

it back. Patient said "hey" to [Olsen] because it had been too long for her head to pause and then [Olsen] screamed and went to fall while having a seizure. The patient caught [Olsen] and lowered her to the floor—which is when I opened the door. [Olsen] seized a very long time —maybe 5 minutes or more—she was still seizing when Bob from RT responded and [Olsen] was unresponsive when they wheeled her away on a stretcher to ER.

After work alterations proved ineffective, CRMC placed Olsen in an alternative position as a temporary file clerk. Olsen had originally requested that CRMC create a new position as a Breast Health Coordinator, but CRMC rejected this proposal as the position required a registered nurse, a qualification that Olsen did not possess. Olsen experienced seizures twice while serving in the file clerk position and was eventually placed on unpaid administrative leave. In 2011, after a change in her medication, Olsen notified CRMC that her seizures were under control and that she had also regained her driver's license. CRMC offered to reinstate Olsen at her prior rate of pay with full benefits, but Olsen rejected this offer and CRMC eventually terminated her.

Olsen filed a charge of discrimination with the MCHR and the EEOC in 2009. Olsen's discrimination claims were based on disability, age, and retaliation, and included violations of the ADA, the ADEA, and the MHRA. Olsen based her age discrimination claim on her alleged replacement by a younger employee and evidence that a supervisor left her a note inquiring if she had plans to work full-time or part-time because she was nearing retirement age.

Olsen received right-to-sue letters and filed suit. CRMC moved for summary judgment contending that Olsen was not entitled to relief because she failed to establish that she was qualified for the position of Certified Mammography Technologist. CRMC claimed that Olsen could not perform the essential functions of her position even with accommodation and that her inability to do so caused a direct

-4-

threat to herself and others. The district court analyzed the disability discrimination claim under the *McDonnell Douglas* burden-shifting framework, because Olsen produced no direct evidence of discrimination. *Olsen v. Capital Region Med. Ctr.*, No. 10-4221-CV-C-FJG, 2012 WL 1232271, at *3 (W.D. Mo. April 12, 2012) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973)). The district court recognized that in order for Olsen to establish a prima facie case of discrimination under *McDonnell Douglas*, she had to show "1) an ADA-qualifying disability; 2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and 3) an adverse employment action due to her disability." *Id*. (citing *Shockley v. City of St. Louis*, No. 4:10CV638 FRB, 2011 WL 4369394, at *6 (E.D. Mo. Sept. 19, 2011)).

Based upon the undisputed facts in the record, the district court first found that Olsen was not qualified under the ADA or MHRA, because "it was not possible for her to carry out the essential functions of her position, during the time she was having a seizure." *Id*. at *6. Second, the district court found that Olsen's "seizures posed a direct threat to the health and safety of herself and others." *Id*. The district court observed that Olsen's seizures caused her to lose consciousness on multiple occasions and incur significant injuries. The court also noted that Olsen's falls could pose risk of injury to herself and the hospital's patients, and that "the imminence of the potential harm was significant." *Id*. at *7.

The court also held that CRMC was entitled to summary judgment on Olsen's age discrimination claim, because Olsen did not make a prima facie showing of age discrimination. The court observed that to make a case for age discrimination the plaintiff must establish that they were replaced by a younger person. *Id*. at *9. The court found, based on undisputed facts, that CRMC never replaced Olsen. *Id*. at *10. The district court also concluded that the note left for Olsen simply inquired about work hours and did not establish age animus. *Id*. Olsen timely appealed.

## II. *Discussion*

In this appeal, Olsen argues that the district court erroneously granted summary judgment to CRMC because she is a qualified individual with a disability under the ADA and the MHRA and she was not a direct threat under the ADA. She also asserts that her age discrimination claim should be remanded for consideration under Missouri law. We review the district court's grant of summary judgment de novo. *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). "To avoid summary judgment, the non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 718 (8th Cir. 2000).

### A. *Qualified Individual with a Disability under ADA and MHRA*

First, Olsen argues that whether she was a qualified individual with a disability was a question of fact for a jury and not appropriate for summary judgment. Second, Olsen argues that the only accommodation she requires is intermittent leave to rest and recuperate following a seizure. Olsen also stresses that she can perform all her job functions, except during a seizure. Third, Olsen further contends that it is CRMC's burden to prove that her proposed accommodations were unreasonable. She asserts that CRMC failed to engage in an interactive process regarding potential available accommodations. Olsen points to opinions of her doctors stating she was capable of performing her duties and that she received high review scores despite her seizures. Fourth, Olsen argues that the district court did not distinguish the qualified-individual requirements under the MHRA from those under the ADA. Fifth, Olsen argues that the district court's ruling contravenes public policy, as it implies that individuals with a condition that produces temporary incapacity could not seek gainful employment in the health care industry.

"Under [the *McDonnell Douglas*] framework, a discrimination plaintiff must first establish a prima facie case of discrimination." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998). "[C]laims under the ADA and the MHRA are

governed by the same standards." *Id*. at 1021, n.4. Under the ADA claim, a plaintiff must show that: (1) she is disabled; (2) she "is qualified to perform the essential functions of [her] job, with or without accommodation[;] and (3) [she] suffered an adverse employment action under circumstances from which an inference of unlawful discrimination" could be inferred. *Id.* at 1021–22. Under the MHRA, the plaintiff must show that she is "(1) disabled within the meaning of the MHRA, (2) qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) suffered an adverse employment action because of [her] disability." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citing *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 (8th Cir. 2003)).

Olsen is not a "qualified individual" for purposes of either the ADA or the MHRA. A "qualified individual" is one, "who, with or without reasonable accommodation, can perform the essential functions" of her position. 42 U.S.C. § 12111(8). A "reasonable accommodation" is defined as "[m]odifications or adjustments to the work environment. . . that enable an individual with a disability who is qualified to perform the essential functions of that position.*"* 29 C.F.R. § 1630.2(o)(ii). Missouri law defines a "disability" as "a physical or mental impairment" that "with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(4). "[T]he 2008 amendments made clear the ADA applies to a person who 'has been subjected to [adverse employment] action. . . under [the ADA] because of an actual *or perceived* physical or mental impairment *whether or not* the impairment limits or is perceived to *limit* a major life activity.' 42 U.S.C. § 12102(3)(A)." *Brown v. City of Jacksonville*, No. 12-1730, 2013 WL 1274566, at *4, (8th Cir. March 29, 2013).

It is undisputed that Olsen was disabled, because Olsen suffered from seizures which, while occurring, incapacitated her and prevented her from performing her job duties. Olsen, however, fails to establish that she is a qualified individual under the

-7-

ADA and MHRA. Even with the CRMC's attempted accommodations, including reducing the brightness of lights, eliminating mold, and rerouting strongly perfumed patients to other technicians, Olsen still suffered from numerous seizures. An essential function of Olsen's job included insuring patient safety. Nothing in the record establishes Olsen could adequately perform that function during the indefinite periods in which she was incapacitated. CRMC's attempted accommodations establish that it engaged in an interactive process with Olsen regarding her accommodations. Olsen claims that intermittent rest is a reasonable accommodation, but the rest did not eliminate the seizures and did not allow Olsen to properly perform her essential job duties, which included operating sophisticated medical machinery and tending to the physical and emotional needs of the patient. The hospital need not subject its patients to potential physical and emotional trauma to comply with its duties under the MHRA and the ADA.

Because Olsen was not a qualified individual to perform the job duties with or without accommodation, the court did not err in granting summary judgment to CRMC based on the ADA and MHRA claims.[2]

## B. *Age Discrimination*

Olsen argues that CRMC discriminated against her on the basis of age. As proof she cites the hiring of a younger, lower-skilled worker as a mammography technician, which coincided with Olsen's forced leave of absence. She also alleges that her supervisor showed age animus by leaving a note asking whether she was going to work full-time or part-time because she was nearing retirement age. Olsen argues that age was a contributing factor in the decision to remove her from her job

---

[2]Because we conclude Olsen has not established a prima facie case of discrimination, we need not address CRMC's asserted defense based on a direct threat.

and as such the court did not properly analyze her claim under MHRA. Olsen concludes that the issue should be remanded for consideration under Missouri law.

A prima facie age-discrimination claim under the ADEA requires that the plaintiff show (1) she "was at least 40 years old; (2) was qualified to perform [her] job; (3) was terminated; and (4) was replaced by another person 'sufficiently younger to permit the inference of age discrimination.'" *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 875 (8th Cir. 2007) (quoting *Hammer v. Ashcroft*, 383 F.3d 722, 726 (8th Cir. 2004)). We distinguish between an ADEA claim for age discrimination and an MHRA claim for age discrimination by the fact that the former requires that the age discrimination be the "but for cause" of the "adverse employment action," while the latter does not require it to be a "but for cause." *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 398 (8th Cir. 2011). In analyzing both the ADEA claim and MHRA claim for age discrimination, we will distinguish

> between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process.

*Rivers-Frison v. Southeast Mo. Community Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotations and citations omitted).

Olsen's age discrimination claims fail for the same reason her disability discrimination claims failed. She is unable to make a prima facie showing that she was qualified for the position. The district court did not err in granting summary judgment.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____