# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3851

_____

| | | |
|---|---|---|
| John R. Downs, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Hawkeye Health Services, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  April 14, 1998

Filed:  July 1, 1998

_____

Before WOLLMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

John R. Downs appeals from the district court's[1] grant of summary judgment to his former employer, Hawkeye Health Services, Inc., on his claim that he was terminated in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. (1995).  We affirm.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

## I.

Downs, a registered nurse, is infected with the Hepatitis C virus.[2]  In March of 1995, he applied for social security disability benefits, stating on his application that he had been unable to work as the result of his disabling condition since December 14, 1994.  He attested that he remained disabled and that extreme fatigue, anxiety, and nausea prevented him from being able "to complete work in a safe manner."  As a result, he concluded, "working at any job has become impossible."

Approximately one month later, Downs was hired as a home health aide supervisor by Hawkeye Health Services, a private corporation which provides health care assistance to home-bound individuals throughout Iowa.  A few months after becoming employed, Downs withdrew his disability application.  In early July, his employment was terminated.

Downs then reapplied for disability benefits.  He again averred that he had been unable to work because of disability since 1994, that "working any job has become impossible," and that he was unable to safely perform his duties.  As he described his condition:

> I basically continually feel as if I have the flu because of the interferon therapy that I undergo.  I also suffer from depression and anxiety disorder for which I am receiving treatment.  I did try and work for a short period of time however I simply was not able to do it.

---

[2]Hepatitis is an infection primarily characterized by inflammation of the liver and often caused by specific viruses.  See Kohl by Kohl v. Woodhaven Learning Ctr., 865 F.2d 930, 933 (8th Cir. 1989).  The Hepatitis C virus, which infects at least 150,000 Americans each year, "remains in the blood for years and accounts for a large percentage of cirrhosis, liver failure, and liver cancer cases."  STEDMAN'S MEDICAL DICTIONARY 784 (26th ed. 1995).

In his supplemental disability report, he stated: "My illness has basically changed my entire life in that I feel sick all the time, cannot sleep, cannot do regular things with my family. It has ruined my career as I am not able to work and basically am not even able to be out in public." In his request for a hearing by an administrative law judge, he attested that "I do not feel that I am capable of gainful employment at this time nor have I been since I filed this application. Between the fatigue and sickness caused by Hepatitis C and my anxiety and depression disorders, I am not capable of maintaining employment." Downs's physician, in fact, had been advising him not to work. As late as 1997, Downs continued to seek disability benefits premised upon his representation that his disability had prevented him from engaging in gainful employment since 1994.[3]

Downs filed a discrimination suit against Hawkeye Health on April 15, 1996, alleging that he had been terminated because of his disability in violation of the ADA. Hawkeye Health moved for summary judgment, which the district court granted.

## II.

The ADA provides that an employer may not discriminate against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112; see also Moore v. Payless Shoe Source, Inc., 139 F.3d 1210, 1212 (8th Cir. 1998); Dush v. Appleton Elec. Co., 124 F.3d 957, 961 (8th Cir. 1997). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that

---

[3]In each of his applications for benefits, Downs affirmed:

I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

-3-

such individual holds or desires." 42 U.S.C. § 12111(8); see also Dush, 124 F.3d at 961. In order to avoid summary judgment, then, Downs was required to demonstrate: (1) that he was disabled; (2) that he was qualified to perform the essential functions of his position, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of his disability. See Moore, 139 F.3d at 1212; Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1474 (8th Cir. 1996); Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir. 1995).

In granting summary judgment, the district court focused on the second element. It held that Downs was unable to present "strong countervailing evidence" of his ability to perform the essential functions of his position at Hawkeye Health sufficient to counteract his earlier sworn statements to the Social Security Administration that he was totally disabled and unable to work. The court therefore concluded that Downs could not be considered a "qualified individual" under the ADA. We review the grant of summary judgment *de novo*, viewing the facts in the light most favorable to Downs. See Moore, 139 F.3d at 1211; Montandon v. Farmland Indus., Inc., 116 F.3d 355, 357-58 (8th Cir. 1997).

On appeal, Downs frames the issue in sweeping terms. He asks us to consider "[w]hether a plaintiff seeking benefits for social security disability is *per se* precluded from being a 'qualified individual' under the Americans with Disabilities Act." Appellant's Brief at iv; see also Hossaini v. Western Missouri Medical Ctr., 140 F.3d 1140, 1142-43 (8th Cir. 1998) (discussing doctrine of judicial estoppel, which "prohibits a party from taking inconsistent positions in the same or related litigation"). We do not believe that Downs has properly characterized the district court's ruling. The court recognized, and we have recently made clear, that "there is no inherent inconsistency between claiming to be eligible for Social Security disability benefits and claiming to be a qualified person with a handicap under the ADA." Moore, 139 F.3d at 1212; see also Robinson v. Neodata Servs., Inc., 94 F.3d 499, 502 n.2 (8th Cir. 1996). This is so "primarily because the Social Security disability standard does not

take into account ability to work with a reasonable accommodation." Moore, 139 F.3d at 1212. Thus, we have joined with the majority of circuits in declining to hold that a plaintiff is "judicially estopped to prove he or she is a qualified individual with a disability for purposes of 42 U.S.C. § 12111(8) simply because he or she also applied for Social Security disability benefits." Id.

Nonetheless, we have also emphasized that a plaintiff may not take inconsistent positions in such proceedings with impunity. An ADA plaintiff may not suddenly step forward to deny the truth of ongoing representations he has made pursuant to an application for disability benefits. See Moore, 139 F.3d at 1212-13; Budd v. ADT Security Sys., Inc., 103 F.3d 699, 700 (8th Cir. 1996) (per curiam). Thus, while Downs's filing of an application for disability benefits does not automatically preclude him from being an ADA-qualified individual, he cannot escape the import of his prior sworn statements.

We have established a standard by which such a plaintiff's apparently conflicting positions are to be reconciled. When an ADA plaintiff has made prior representations of total disability during the relevant period, a district court properly enters summary judgment against him unless the plaintiff has presented "strong countervailing evidence" that he is in fact qualified, as defined by the ADA, to perform the essential functions of the job. Dush, 124 F.3d at 963; see also Moore, 139 F.3d at 1213. This burden is, by the claimant's own making, "particularly cumbersome." Dush, 124 F.3d at 963.

Downs has placed himself in such a predicament. As detailed above, he has testified repeatedly and persuasively (particularly in his second disability benefits application) that he was and remains incapable of performing the duties that his position required. Particularly telling are his statements that "working any job has become impossible," and that "I did try and work for a short period of time [at Hawkeye Health] however I simply was not able to do it." An employee who is unable to report

-5-

to work on a consistent basis is incapable of performing the essential functions of a job. See Moore, 139 F.3d at 1213 (quoting Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997)).  Downs has always maintained that disabling fatigue, nausea, and anxiety resulting from his chronic hepatitis have effectively "ruined my career as I am not able to work and basically am not even able to be out in public."

Downs has offered little to counter the force of his prior testimonials.  He primarily asserts that he would have been able to continue in his duties at Hawkeye Health but for the fact that his termination itself so devastated him that his disability worsened, which only then rendered him truly unable to be gainfully employed.  The argument is resourceful, but we are unpersuaded.  First, it flatly contradicts the information he provided to the Social Security Administration.  Second, although his psychologist did testify that the termination had impacted negatively upon Downs's mental well-being, that testimony cannot be fairly interpreted as suggesting that Downs would have been able to continue to perform his essential duties had he not been discharged.  Indeed, the psychologist stated that he could not testify with "any degree of certainty" to anything regarding the roots of Downs's emotional difficulties.  In any event, the testimony does not speak at all to Downs's chronic medical condition, which he has consistently averred has rendered him disabled and incapable of work since 1994, well prior to his termination.

To his credit, Downs tried to make the most of his employment opportunity at Hawkeye Health.  Unfortunately, by his own admission, his medical condition rendered him "simply [unable] to do it."  Because Downs has fallen well short of offering the requisite strong countervailing evidence that he is a qualified individual under the ADA, the district court had no choice but to enter summary judgment on his claim.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.