# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1992

_____

| | | |
|---|---|---|
| GREGORY Q. HENNENFENT, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| MID DAKOTA CLINIC, P.C.; BRUCE M. | * | Appeal from the United |
| HETLAND, M.D., individually and as | * | States District Court for the |
| member of the Board of Directors and | * | District of North Dakota. |
| agents of Mid Dakota Clinic, P.C.; | * | |
| THOMAS P. HUTCHENS, M.D., | * | |
| individually and as member of the Board | * | |
| of Directors and agent of Mid Dakota | * | |
| Clinic, P.C.; JEFFREY L. ORCHARD, | * | |
| M.D., individually and as member of the | * | |
| Board of Directors and agent of Mid | * | |
| Dakota Clinic, P.C.; GAYLORD J. | * | |
| KAVLIE, M.D., individually and as member | * | |
| of the Board of Directors and agent of | * | |
| Mid Dakota Clinic, P.C.; CHRISTOPHER | * | |
| J. ADDUCCI, M.D., individually and as | * | |
| member of the Board of Directors and | * | |
| agent of Mid Dakota Clinic, P.C.; DEREK | * | |
| OLDENBURGER, M.D., individually and | * | |
| as agent of Mid Dakota Clinic, P.C.; | * | |
| STEVEN K. HAMAR, M.D., individually | * | |
| and as agent of Mid Dakota Clinic, P.C.; | * | |
| MICHAEL J. TOMASKO, individually | * | |
| and as agent of Mid Dakota Clinic, P.C., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  November 16, 1998
Filed:    December 29, 1998
_____

Before BOWMAN, Chief Judge, BRIGHT and MAGILL, Circuit Judges.
_____

BRIGHT, Circuit Judge.

Mid Dakota Clinic, P.C. (Clinic) suspended its physician, Gregory Hennenfent, M.D., a severely disabled person, from practicing medicine at the Clinic. Hennenfent brought this action claiming discrimination under the Americans with Disabilities Act, 42 U.S.C. § 621 et seq. (ADA), together with related state claims under North Dakota law. The district court dismissed all claims on summary judgment, determining that with his disability, Hennenfent could not perform on call duty, an essential function of his medical practice at the Clinic. The district court further found that the Clinic had accommodated Hennenfent but that Hennenfent had refused to comply with the accommodations.

We agree that the Clinic extended reasonable accommodation to Hennenfent. We also agree that Hennenfent's continued intransigence -- his refusal to report to the Mayo Clinic for an evaluation of his present disability -- justifies his suspension by the Clinic. These determinations support an affirmance of the dismissal on summary judgment at this time. However, for reasons stated immediately below, that dismissal of the federal ADA claim and certain state law claims are without prejudice.

As a further basis for dismissal on summary judgment of all claims, federal and state, the district court determined that Hennenfent cannot perform the essential functions of the practice of medicine even with accommodation. This determination

-2-

is premature pending plaintiff's examination by the Mayo Clinic, should he choose to comply with the examination requirement. Accordingly, this finding or determination is vacated, also without prejudice.

## I.

Dr. Gregory Hennenfent is an internist who worked at the Clinic. Hennenfent began working at the Clinic in 1983, and owns shares in the professional corporation. As part of his duties, he worked and performed on call duties at the Clinic and St. Alexius Medical Center. On call duty requires a doctor to be available for a certain period of time to see patients and to make rounds at the hospital and clinics. It involves a considerable amount of walking between the hospital and clinics. Weekend on call duty requires more walking than weekday on call duty.

Hennenfent suffers from diabetes, and has a number of related complications, including poor circulation. In December 1991, Hennefent's right great toe had to be amputated, and he took a medical leave of absence. This was not Hennenfent's first medical leave of absence. In February 1992, he returned to work with a limited schedule and was not required to perform on call duties until November 1992.

In March 1993, Hennenfent requested that he be relieved of his weekend on call duties due to health problems, and the Clinic agreed. In 1994, Hennenfent had a below-the-knee amputation because of circulation problems. Hennenfent was fitted with a prosthesis and returned to work on a limited basis. In an effort to save his remaining leg, Hennenfent requested that his schedule be limited and that his on call duties be reduced. The Clinic complied with this request, and from the time of his amputation in October 1994 until the fall of 1995, Hennenfent was not required to perform weekend on call duties and performed only limited on call duties during the week. A backup on call physician was provided to assist Hennenfent with his on call duties. The backup physician would handle all hospital duties after 9:00 p.m. or at

other times during the day and evening if requested by Hennenfent. Hennenfent admitted that he did not utilize the backup physician that was provided by the Clinic.

In late 1995, the Clinic requested that Hennenfent begin taking weekend on call duty with the help of a backup physician. This request was based on a letter received from a treating physician which indicated that Hennenfent could handle weekend on call duties with a backup physician. Hennenfent refused to be placed on the weekend on call schedule.

In early 1996, the board of directors of the Clinic placed Hennenfent on required medical leave and requested that he be independently examined by a physician at the Mayo Clinic to determine his level of disability so that they could provide the appropriate accommodations. Hennenfent failed to keep his initial appointment at the Mayo Clinic and was suspended by the Clinic's board of directors.[1] In April 1996, Hennenfent agreed to be examined by the Mayo Clinic. The results of the examination indicated that Hennenfent could perform weekend on call duties with his prosthesis and the help of a backup physician. In May 1996, Hennenfent's remaining leg was amputated at the Mayo Clinic. The Clinic requested that Hennenfent be examined a second time to determine his level of disability in light of this change in his physical condition, and to see what types of accommodation would be appropriate. Hennenfent refused to be examined a second time, and remains on suspension from the Clinic.

On October 17, 1996, Hennenfent brought this lawsuit against the Clinic, and a number of its shareholders, alleging a federal claim under the ADA, and a number of related state claims for defamation, civil conspiracy, invasion of privacy, wrongful termination, interference with the right to practice medicine, and exemplary damages. The district court granted summary judgment in favor of the Clinic and the shareholders

---

[1]Hennenfent received disability insurance and payments from the Social Security Administration while he was on medical leave and during his suspension.

on all claims, and Hennenfent appeals.  As indicated, we affirm the dismissal of all claims, some with prejudice, others without prejudice as indicated in this opinion.

## II.

We review the district court's grant of summary judgment *de novo*.  Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998) (citation omitted). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The ADA requires an employer to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability.  42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a) (1998).  In order to survive summary judgment, an ADA plaintiff must establish a prima facie case of discrimination by showing "that [he] is disabled within the meaning of the [ADA]; [that he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation; and [that he] suffered an adverse employment action because of [his] disability."  Webb v. Mercy Hosp., 102 F.3d 958, 959-60 (8th Cir. 1996).

As noted by the district court, the Clinic made "noble efforts" in accommodating Hennenfent over the years by providing him with reduced work schedules, extended leaves of absence, and backup physicians to assist him with his on call duties. Hennenfent v. Mid Dakota Clinic, P.C., No. Civ. A1-96-117, at 8 (D.N.D. March 3, 1998).  The Clinic provided a backup physician to assist Hennenfent with on call duties. Cf. Cochrum v. Old Ben Coal Co., 102 F.3d 908, 912 (7th Cir. 1996); Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991).  The accommodations that were provided by the Clinic appear appropriate and reasonable, and complied with the law.[2]  Cf.

---

[2]Hennenfent insisted that the only accommodation that was appropriate for him was that he be relieved from participating in on call duty.  "An employer is not obligated to provide an employee the accommodation he requests or prefers, the

Cochrum, 102 F.3d at 912 (assignment of helper not a reasonable accommodation); Gilbert, 949 F.2d at 644. These accommodations would have continued, subject to Hennenfent's complying with the Clinic's further request that he be examined at the Mayo Clinic for his additional disability relating to the amputation of his remaining leg.[3]

At this stage of the proceedings, the Clinic has offered reasonable accommodations to Hennenfent subject to an independent medical examination at the Mayo Clinic. The extent of the disability and the degree of accommodation now necessary for Dr. Hennenfent remains uncertain until Hennenfent complies with the requirement for a further medical examination.

### III.

Because our decision is based upon Hennenfent's refusal to cooperate with the Clinic's request for a medical examination, we do not reach the issue of whether Hennenfent could perform the essential functions of the practice of medicine at this time.

### IV.

The state issues include a claim under the North Dakota Human Rights Act, Chapter 14-02.4 of the North Dakota Century Code (NDHRA) and other claims. The

---

employer need only provide some reasonable accommodation." Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996) (citation omitted).

[3]Section 12112(d)(4)(A) of the ADA provides that covered entities shall not require medical examinations of their employees for the purpose of determining "whether such employee is an individual with a disability or . . . the nature or severity of the disability" unless the examination is shown to be "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). We are satisfied that Mid Dakota Clinic's request for an independent medical examination was job-related and a business necessity.

NDHRA claim appears to seek similar relief as under the Americans with Disabilities Act.  This claim is also dismissed without prejudice.

The state claims for wrongful termination and interference with plaintiff's right to practice medicine relate in some way to the ADA and NDHRA claims and should be dismissed without prejudice.

The district court rulings on the additional state claims for civil conspiracy, medical malpractice, invasion of privacy, and a claim for exemplary damages which were dismissed with prejudice are affirmed for the reasons stated by the district court.

V.

Accordingly, we affirm without prejudice the dismissal of the ADA, NDHRA, and state claims, for wrongful termination of medical practice and for interference with plaintiff's right to practice medicine.

We affirm the dismissal of all other state claims with prejudice.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-