John L. BUSH, Plaintiff,

v.

IOWA NATIONAL GUARD and Iowa
Department of Personnel,
Defendants.

No. C97–4099–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 22, 1999.

682

Paul D. Lundberg, Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, IA, for Plaintiff.

Grant K. Dugdale, Asst. Atty. Gen., Des Moines, IA, for Defendant.

## ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................682

II. STANDARDS FOR SUMMARY JUDGMENT ...........................683

III. FACTUAL BACKGROUND .......................................684

IV. LEGAL ANALYSIS ...........................................686
 A. Bush's Representation of "Total Disability" ...........686
 B. Bush's Ability To Perform The Essential Functions Of A Firefighter ..689

V. CONCLUSION ...............................................690

Under what circumstances may an employee pursue his employer for discriminating against him on the basis of his disability when that employee has previously held himself out as "totally disabled"? This question—as well as the adequacy of the plaintiff's *prima facie* case—confront the court in this disability discrimination lawsuit. The defendants have moved for summary judgment on the ground that the plaintiff-employee is precluded from proving his claims under the Americans With Disabilities Act and the Rehabilitation Act of 1973 because of his prior representation that he was totally disabled on an application for disability insurance benefits. Alternatively, the defendants challenge the adequacy of the plaintiff's *prima facie* case of discrimination.

## I. INTRODUCTION

Plaintiff John L. Bush filed this lawsuit on November 3, 1997, against his former employer, Iowa National Guard, and the Iowa Department of Personnel, the state agency responsible for operating Iowa's recall system. In his complaint, Bush alleges violations of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C.

§ 794. Specifically, Bush alleges that he is a qualified individual with a disability, and that the defendants failed to provide a reasonable accommodation for Bush's known physical limitations resulting from a back injury he sustained on March 21, 1995, or otherwise failed to make reasonable effort to continue Bush's employment. Bush seeks as relief reinstatement, back pay, front pay, compensatory damages for emotional distress, punitive damages, attorney's fees, and costs. The defendants answered the complaint on December 4, 1997, denying Bush's allegations.

On October 13, 1998, the defendants moved for summary judgment. They raise two arguments in support of their motion. First, the defendants contend that Bush is not an "otherwise qualified individual with a disability" because he represented himself as "totally disabled" in an application for long term disability benefits. Second, the defendants contend that they are entitled to summary judgment because Bush cannot establish the second element of his *prima facie* case of disability discrimination—namely, that with or without reasonable accommodation, he is able to perform the essential functions of a firefighter.

Bush has resisted the motion for summary judgment in its entirety. Bush asserts that summary judgment is inappropriate because genuine issues of material fact exist in the record as to whether he is a qualified individual with a disability despite his earlier representation that he was totally disabled. Bush also contends that there is a genuine factual dispute as to whether he is able to perform the essential functions of the firefighter position with a reasonable accommodation.

Bush is represented by counsel Paul D. Lundberg of Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, Iowa. The defendants are represented by Assistant Attorney General Grant K. Dugdale, Des Moines, Iowa. Neither party requested oral arguments on the motion for summary judgment and the court has not deemed such arguments necessary. The court will turn first to a consideration of the standards to be applied to motions for summary judgment. Next, the court will set forth the factual background established by the summary judgment record. Finally, the court will conduct its analysis of the defendants' motion.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cau-

tioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Indeed, the United States Court of Appeals for the Eighth Circuit recently observed that "[s]ummary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim...." *Breeding v. Arthur J. Gallagher and Co.,* 164 F.3d 1151, 1155–56, 1999 WL 13265 *2 (8th Cir.1999). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we

are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir. 1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also instructed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1205; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995). With these standards in mind, the court turns to consideration of the defendants' motion for summary judgment on Bush's claims.

### III. FACTUAL BACKGROUND

The court will not attempt an exhaustive recitation of the disputed and undisputed facts, but will instead set forth the factual background gleaned from the undisputed facts presented in the summary judgment record. In its legal analysis, the court will address where necessary Bush's assertions of genuine issues of material fact that may preclude the granting of summary judgment in favor of the defendants.

John Bush was employed by the 185th Fighter Wing of the Iowa National Guard as an airport firefighter at the Sioux City, Iowa airbase from January 19, 1991, through October 17, 1997. The airport fire department is responsible for responding to actual or potential civilian and military air crash emergencies, for conducting search and rescue missions for injured persons, and for preventing or extinguishing fires on aircraft or airport facilities.

Bush satisfactorily performed his duties as an airport firefighter through 1995. On January 4, 1996, Bush notified his supervisor, Fire Chief James Hathaway, that he was no longer able to bend over as a result of a work-related back injury he had suffered some months before.[1] Bush was then sent home from work. The next day, January 5, 1996, Chief Hathaway arranged for Bush to be examined by the fire department's physician, Dr. Douglas Martin.

On January 11, 1996, Dr. Martin sent a letter to Chief Hathaway summarizing the results of his evaluation, and of Bush's functional capacity examination. Dr. Martin determined, *inter alia*, that Bush qualified for the light physical demand classification. In response to Chief Hathaway's inquiry about Bush's ability to perform firefighter duties, Dr. Martin stated as follows:

> Given the description of the job that you provided to me, which requires heavy lifting, such as removing people from fires, etc., I believe that the results of our back screening examination would not place him in that particular category. It would therefore be my opinion that if he was subjected to such situation [sic], he could very likely injure himself further. Therefore, I do not believe he would be able to perform the physical requirements of the job as described.

Defendants' Exhibit 5. Regarding Chief Hathaway's inquiry as to whether Bush's condition was temporary or permanent, Dr. Martin supplied the following response:

> [T]his is not as easily addressed as whether this is temporary or permanent. Since the gentleman does have a disk bulge and is currently symptomatic, I think that some consideration should be given to further treatment for this in the form of an

epidural flood. I would recommend that he return to Dr. Purves if symptomatically he is getting to the point where he would [sic] something done for his back to alleviate the pain. I do not believe, however, that this treatment would permanently change this gentleman's ability to function as a fire fighter. In that regards [sic], he likely will always have difficulty with lifting, and always would have some question as to whether heavy lifting activities would potentially worsen his condition or exacerbate his problems. In that regards [sic], the condition is somewhat permanent. However, his pain may be a temporary condition as often times epidural floods and subsequent treatments do help with pain and the discomfort.

Defendants' Exhibit 5. Dr. Martin also indicated that "[a]s with most back injuries involving disc abnormalities, these are classified as long-term problems." *Id.*

Bush requested several accommodations for his back injury. For example, Bush requested to be assigned light duty work in the fire department's alarm room, or to be placed on modified regular duty status.[2] Alternatively, Bush asked to be placed on paid administrative leave pending his efforts to find a medical solution to his back problems. These requests were denied. Instead, Bush was granted paid—and subsequently unpaid—medical leave, as well as accrued vacation time.

On February 28, 1996, Bush completed an application for long-term disability benefits under a group long-term disability insurance plan provided by the State of Iowa. In a section of the application entitled "Attending Physician's Statement of Disability," a Dr. Barrie Purves indicated that Bush was "now totally disabled."[3] Defendants' Exhibit 6. In

---

1. Apparently, Bush injured his back in March of 1995 when he lost his footing while attempting to board a fire truck. Bush has not received any worker's compensation benefits for this injury.

2. The gravamen of this latter request was to allow Bush to perform all duties of an airport firefighter with the exception of actual rescue operations.

3. The long-term disability plan defines the term "totally disabled" as follows:

> **Totally Disabled** means that during the first 12 months, including the Elimination Period, you are prevented by Disability from doing all the material and substantial duties of your own occupation on a full time basis or any available occupation with the State of Iowa for which you are or could become qualified by training, education or experience.
> After that, and for as long as you remain Totally Disabled, you are prevented by Disability from doing any occupation or work for which

another section, entitled "Employee's Statement," Bush answered "yes" to the inquiry "[a]re you now totally disabled and unable to work?" *Id.* When asked "[w]hen will you be able to return to work? (Please give an approximate date)," Bush answered "n/a— now." *Id.* Bush's application for long-term disability benefits was approved, and he received benefits from May of 1996 to January of 1997. He was terminated from his firefighter position with the Iowa National Guard on October 17, 1996.

On September 6, 1996, Bush began participation in the State of Iowa's recall program. Specifically, Bush applied to be placed on the recall list for the following positions: (1) State Industries Technician I; (2) Correctional Officer; (3) Airport Firefighter; (4) Drivers License Examiner; (5) Meat Inspector; and (6) Fire Inspector I. Bush was informed by the Iowa Department of Personnel that he did not satisfy the physical requirements criteria for the State Industries Technician I, Correctional Officer, and Airport Firefighter positions. He was further advised that he did not possess the requisite educational and experience requirements for the Drivers License Examiner and Meat Inspector positions. Finally, Bush was informed that the Fire Inspector I position was exempt from the recall list. In February or March of 1997, Bush applied to be placed on the recall list for the position of pharmacy assistant. In August 1998, Bush received a Notice of Recall for a pharmacy assistant position at the Fort Dodge Correctional Facility. Bush declined this position.

In August of 1997, Bush underwent back surgery performed by Dr. William Samuelson. Approximately one year later, in August of 1998, Dr. Samuelson issued Bush a full medical release to resume his job as an airport firefighter.

### IV. LEGAL ANALYSIS

#### (including some further findings of fact)

The defendants have moved for summary judgment on two alternative grounds, both of which attack the adequacy of Bush's *pri-*

*ma facie* case of disability discrimination. First, the defendants assert that because Bush characterized himself as "totally disabled" in his application for long-term disability insurance benefits, he is precluded from establishing that he is an "otherwise qualified individual with a disability." Second, the defendants assert that even if Bush's representations that he was "totally disabled" do not automatically disqualify him from proving his discrimination claim, he is still unable to establish a *prima facie* case because he cannot demonstrate that he could perform the essential functions of airport firefighter, with or without reasonable accommodation.

■ Bush has alleged violations of both the ADA, 42 U.S.C. § 12101 *et seq.,* and the Rehabilitation Act, 29 U.S.C. § 794. In addressing the motion for summary judgment, the court will refer only to the ADA claim because the legal principles applicable to the ADA claim apply with equal force to Bush's Rehabilitation Act claim. *See Perkins v. St. Louis County Water Co.,* 160 F.3d 446, 447–48 (8th Cir.1998) (observing "[w]e refer in this opinion only to Mr. Perkin's ADA claim, but the legal principles applicable to it are equally applicable to his Rehabilitation Act claim."); *see also Allison v. Dep't of Corrections,* 94 F.3d 494, 497 (8th Cir.1996) (observing that the same basic standards and definitions are used under both the ADA and the Rehabilitation Act, and that "cases interpreting either are applicable and interchangeable").

### A. Bush's Representation of "Total Disability"

The court has previously engaged in extensive discussions of the origins of the ADA. *See Valentine v. Am. Home Shield Corp.,* 939 F.Supp. 1376, 1388–91 (N.D.Iowa 1996); *Muller v. Hotsy Corp.,* 917 F.Supp. 1389, 1402–05 (N.D.Iowa 1996); *Heather K. v. City of Mallard, Iowa,* 887 F.Supp. 1249, 1263–66 (N.D.Iowa 1995); *Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 387–90 (N.D.Iowa 1995); *Fink v. Kitzman,* 881

you are or could become qualified by training, education or experience.

Defendants' Exhibit 16 at 26.

F.Supp. 1347, 1368–71 (N.D.Iowa 1995). Rather than repeat those discussions here, the court will turn directly to a consideration of the requisites for establishing an ADA claim.

The ADA prohibits an employer from discriminating against a "qualified individual with a disability because of the disability" *Downs v. Hawkeye Health Serv., Inc.,* 148 F.3d 948, 950 (8th Cir.1998); 42 U.S.C. § 12112. "A 'qualified individual with a disability' is a person 'with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)). The United States Court of Appeals for the Eighth Circuit has made clear that to establish a *prima facie* case under the ADA, a plaintiff must show (1) that he or she is disabled within the meaning of the ADA; (2) that he or she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) that he or she has suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Hennenfent v. Mid Dakota Clinic, P.C.,* 164 F.3d 419, 421–22, 1998 WL 901709 (8th Cir.1998); *Webb v. Mercy Hosp.,* 102 F.3d 958, 959–60 (8th Cir.1996); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996); *Price v. S–B Power Tool,* 75 F.3d 362, 365 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *Benson v. Northwest Airlines,* 62 F.3d 1108, 1112 (8th Cir.1995).

■ The *prima facie* case creates a rebuttable presumption of discrimination. *Young v. Warner–Jenkinson Co., Inc.,* 152 F.3d 1018, 1021 (8th Cir.1998); *S–B Power Tool,* 75 F.3d at 365 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The burden of production then shifts to the employer to come forward with a legitimate, non-discriminatory reason for its actions. *Id.* "Once the [employer] has advanced a non-discriminatory reason, the presumption disappears and the [employee] bears the burden of demonstrating that the employer's proffered reason is merely a pretext for intentional discrimination." *Young,* 152 F.3d at 1021. The party asserting discrimination retains at all times the burden of persuading the trier of fact that he or she has been the victim of illegal discrimination due to a disability. *Id.; Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107–08 (8th Cir. 1998).

For purposes of their motion for summary judgment, the defendants do not dispute that Bush has a disability protected by the ADA. Instead, the defendants focus their attack on the second element of Bush's *prima facie* case—asserting that based on his prior representation that he was "totally disabled," Bush is unable to establish that he was qualified to perform the essential functions of his firefighter position, with or without reasonable accommodation.

As the defendants correctly acknowledge, the issue of whether persons who characterize themselves as "totally disabled" in order to procure state, federal, or insurance benefits are precluded from proving that they are "qualified individuals with disabilities" under the ADA, is a point of great contention among courts. *See also Dush v. Appleton Elec. Co.,* 124 F.3d 957, 961–62 (8th Cir.1997) (citing cases and observing that a "significant number of federal courts have ... decided that a person who characterizes herself as 'totally disabled' ... will normally be estopped from [proving her ADA claim]" while "[d]ifferent courts have positioned themselves on the other side of this dispute, holding that one who represents herself as 'totally disabled' for purposes extraneous to the ADA should still have an opportunity to recover under that statute.").

■ The United States Court of Appeals for the Eighth Circuit has thus far declined to adopt a definitive position on whether ADA claimants who have previously represented themselves as "totally disabled" are estopped from proving their ADA claims. *Dush,* 124 F.3d at 962; *see also Moore v. Payless Shoe Source, Inc.,* 139 F.3d 1210, 1212–13 (8th Cir.1998) (declining to hold that an ADA plaintiff is judicially estopped from proving he or she is a qualified individual with a disability under the ADA simply because he or she also applied for Social Securi-

ty benefits). The circuit court has, however, considered the issue in the context of a motion for summary judgment and has provided the following guidance for district courts:

In evaluating whether a genuine issue of material fact exists to show that a person was, at relevant times, a qualified individual with a disability, special attention must be given to the circumstances surrounding the case. Where, as here, the party opposing the motion has made sworn statements attesting to her total disability and has actually received payments as a result of her condition, the courts should carefully scrutinize the evidence she marshals in an attempt to show she is covered by the ADA. The burden faced by ADA claimants in this position is, by their own making, particularly cumbersome, for summary judgment should issue unless there is "strong countervailing evidence that the employee ... is, in fact, qualified." *Mohamed [v. Marriott Int'l, Inc.,]* 944 F.Supp. 277, 282 (S.D.N.Y.1996). Typically, "the prior representations [of total disability] carry sufficient weight to grant summary judgment against the plaintiff."

*Dush,* 124 F.3d at 963 (some internal citations omitted). Thus, under the standard articulated in *Dush,* an ADA plaintiff "may not suddenly step forward to deny the truth of ongoing representations he has made pursuant to an application for disability benefits," but rather must present " 'strong countervailing evidence' that he is in fact qualified, as defined by the ADA, to perform the essential functions of the job." *Downs,* 148 F.3d at 951 (citing *Dush* ).

The record reveals that Bush did indeed represent himself as "totally disabled" within the relevant time period for his ADA claim. Seizing upon Bush's characterization of himself as totally disabled in his application for long-term disability insurance benefits, the defendants assert that Bush is unable to show by "strong countervailing evidence" that he was able to perform the essential functions of the firefighter position. In the defendants' view, Bush's representation of "total disability" on the application for disability benefits amounts to an "admission that he could not perform the essential functions of the firefighter position with or without reasonable accommodation...." Defendants' Brief in Support of Motion for Summary Judgment at 12.

Bush counters this argument by pointing to what he characterizes as "overwhelming" evidence that he was not totally disabled and that with reasonable accommodation, he could have performed his duties as an airport firefighter at the time of his discharge. Specifically, Bush directs the court's attention to Dr. Martin's report in which Dr. Martin indicates that Bush qualified for the "light physical demand classification" as of January 11, 1996. Bush also relies on his correspondence with the Iowa Department of Personnel regarding his ability to participate in the state recall program as evidence that he was not "totally disabled" during the relevant time period but instead, capable of performing positions—including the firefighter position—with reasonable accommodation. Bush further points out that the vocational consultant assigned to him by the State's long-term disability carrier did not consider him to be "totally disabled." Plaintiff's Exhibit 7. To the contrary, Bush asserts, the vocational consultant asked the Iowa National Guard to allow Bush to return to his firefighter position with accommodations such as being excused from search and rescue missions or being assigned to light duty in the alarm room.

Having reviewed the evidence contained in the summary judgment record, the court is persuaded that, to the extent Bush represented himself as "totally disabled" during the relevant time-frame, Bush has met his burden to show "strong countervailing evidence" that he was in fact qualified to perform the essential functions of the firefighter position sufficient to generate a genuine issue of material fact for trial. The starting point for this conclusion is the application for long-term disability benefits. Although the parties have not addressed the matter, the court observes that in the very section where Bush marked "yes" to the query "[a]re you now totally disabled and unable to work," he also answered "now" to the query "[w]hen will you be able to return to work?" Defen-

dants' Exhibit 6. In the court's view, this factual circumstance readily distinguishes Bush's situation from that of an ADA plaintiff who has previously characterized himself or herself as "totally disabled" and then "step[ped] forward to deny the truth of ongoing representations [he or she] has made pursuant to an application for disability benefits." *Downs*, 148 F.3d at 951. Here, although Bush indicated he was "totally disabled," he simultaneously indicated he could return to work immediately. A genuine issue of material fact therefore arises from the face of the disability benefits application as to whether Bush was totally disabled within the meaning of the ADA.[4] The record further reveals that prior to seeking disability benefits and again after receiving disability benefits but prior to his termination on October 17, 1996, Bush requested to be assigned light duty in the fire department's alarm room or to be assigned modified regular duty status to accommodate his back injury. Again, the court finds these facts to constitute strong countervailing evidence that Bush was qualified to perform the essential functions of the firefighter position with reasonable accommodation.

In sum, the court concludes that Bush has satisfied his burden of producing strong countervailing evidence that he was in fact qualified—as defined by the ADA—to perform the essential functions of airport firefighter with or without reasonable accommodation. Therefore, summary judgment is inappropriate on the ground that Bush has previously represented himself as "totally disabled" in his application for disability benefits.

### B. Bush's Ability To Perform The Essential Functions Of A Firefighter

The defendants offer one additional challenge to the adequacy of the second element of Bush's *prima facie* case of disability discrimination—that Bush has failed to make a facial showing that reasonable accommodation is possible. Bush refutes this contention, asserting that at the time of his discharge, he could have remained employed as an airport firefighter if the defendants had accommodated him either by assigning him light duty status in the alarm room, providing him with paid administrative leave, or a combination of the two.

 The court is mindful that the "threshold of proof necessary to establish a *prima facie* case [of disability discrimination] is minimal." *Young*, 152 F.3d at 1022. Indeed, " '[t]he *prima facie* burden is not so onerous as, nor should it be conflated with, the ultimate issue' of discriminatory action.' " *Id.* (quoting *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995)). Applying this standard, the court concludes that Bush has satisfied the "minimal" threshold necessary to establish his *prima facie* case.

 Although the defendants go to great lengths to persuade the court that the undisputed facts show that Bush was unable to perform the physical requirements of the firefighter position, the record contains numerous examples of firefighters who were unable to fulfill these requirements because of physical restrictions similar to Bush's, and were assigned light duty in the alarm room as an accommodation. The defendants assert that even if alarm room duty was an accommodation, it was limited to "temporary illnesses and disabilities," not long-term disabilities such as Bush's back injury. The court finds that Bush has generated genuine issues of material fact as to whether alarm room duty was a reasonable accommodation for his injury. For example, whether Bush's back injury is properly characterized by the defendants as a permanent or long-term disability is disputed. Bush avers that as early as December of 1997, he was physically capa-

---

4. The defendants have taken great care to apprize the court of the definition of "totally disabled" as that term is used in the disability benefits application. The court has reviewed that definition and has produced it in its entirety in the Factual Background portion of this order. However, the court observes that the policy definition makes no mention of "reasonable accommodation" as that term is employed under the ADA. It is therefore entirely possible that Bush could be "totally disabled" for purposes of procuring disability benefits, yet at the same time, be qualified to perform the essential functions of the firefighter position with reasonable accommodation as required under the ADA.

ble of performing all firefighter duties without accommodation. The record also reflects that Dr. Samuelson, Bush's orthopaedic surgeon, released Bush to return to firefighter work in August of 1998. Although the defendants may well have a legitimate, non-discriminatory reason for declining to assign Bush to alarm room duty, that matter is not presently before the court.[5] What is before the court is the adequacy of Bush's *prima facie* case. Having concluded that Bush has made the requisite showing, the court finds that genuine issues of material fact preclude the defendants' motion for summary judgment.

### V. CONCLUSION

The court finds that Bush has met his burden of producing strong countervailing evidence that he was qualified to perform the essential functions of an airport firefighter with reasonable accommodation at the time of his discharge. The court further finds that genuine issues of material fact exist as to the sufficiency of Bush's *prima facie* case of disability discrimination. Under these circumstances, summary judgment is inappropriate. The defendants' motion for summary judgment is **denied.**

**IT IS SO ORDERED.**

---

**5.** The defendants have premised their motion solely upon perceived inadequacies in Bush's *prima facie* case. Therefore, the court need not

progress to the second or third stages of the burden-shifting analysis discussed *supra.*