IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 29, 2008

No. 06-31156

Charles R. Fulbruge III
Clerk

C W GALLUP, also known as Bo Gallup; SUSAN MOCK GALLUP

Plaintiffs - Appellees - Cross-Appellants

v.

OMAHA PROPERTY AND CASUALTY INSURANCE COMPANY

Defendant - Appellant - Cross-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:03-CV-3476

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

C.W. Gallup and Susan Mock Gallup ("the Gallups") owned a home on the banks of the Bouge Falaya river outside of Covington, Louisiana. The home was built on pilings to withstand flooding. Two floods in 2002 and 2003 resulted in land erosion which undermined the pilings supporting one section of their home. After each flood, the Gallups made claims under the Standard Flood Insurance Policy ("SFIP") program, which is part of the National Flood Insurance Program ("NFIP") administered by the Federal Emergency Management Agency

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("FEMA"). Insurer Omaha Property and Casualty Insurance Co. ("Omaha"), which provides flood insurance under the NFIP as a "Write Your Own" insurer, denied both claims. The Gallups sued in federal court under 42 U.S.C. § 4072. Following a bench trial, the district court awarded the Gallups the cost of moving their home, which it found to be the "fairest, most economical" remedy. We affirm the Gallups' right to recover for losses from flooding in 2003, but we reverse the district court's equitable remedy because it is incompatible with the terms of the SFIP. We render judgment in the amount of $117,114.74, which is the amount the Gallups are contractually entitled to recover under the SFIP for direct physical losses to their home.

## I. FACTS AND PROCEEDINGS

The factual background of this case is discussed in detail in Gallup v. Omaha Property & Casualty Insurance Co., 434 F.3d 341, 343 (5th Cir. 2005), a prior interlocutory appeal.

> The Gallups purchased a SFIP from defendant Omaha . . . for their home and its contents in Covington, Louisiana in 2002 and 2003. . . .
>
> On December 24, 2002, a flood occurred on the plaintiffs' property ("Flood I"). An architect and engineer consulted by the plaintiffs determined that the flood caused damage to the structure of the home. The plaintiffs filed a Proof of Loss with Omaha, claiming damages of $210,000.00 . . . . Omaha's engineer inspected the home and recommended repairs to restore the structural integrity of the home but also stated that the home had not suffered any damage from the flood, other than soil loss from underneath the pilings. Omaha modified the claim, paying only the amount it would cost to replace the soil beneath the home, approximately $9,000.
>
> In June 2003, another flood occurred related to Tropical Storm Bill ("Flood II"). Flood II severely damaged the Gallup home, causing part of the home to sag and completely undermining several footings supporting the piers that elevate the home. The plaintiffs filed another Proof of Loss with Omaha seeking approximately $209,000 . . . . Omaha denied the claim after its attempts to settle for a nominal sum were unsuccessful.

Id. The Gallups' home, which has since been sold, had an unusual design. It consisted of two glass-walled steel frame buildings connected by exterior walkways and supported by eight-foot-high steel pilings. The interior walls of the home were not load-bearing. Building A was constructed in 1964 and Building B was constructed in 1976. Only Building B was affected by the 2003 floods.

In December 2003, the Gallups sued Omaha and brought federal and state claims for breach of contract. The district court issued an interlocutory order finding that the Gallups' state law claims were not preempted by the NFIP. Omaha appealed from the order and this Court reversed, concluding that state law tort claims arising from claims handling by an NFIP insurance provider are preempted by federal law. Gallup, 434 F.3d at 344–45.

On remand, the district court held a bench trial and rendered a verdict of $85,000 in favor of the Gallups. The district court found that the soil damage from Flood I and Flood II was flood-induced land subsidence covered under the SFIP. See SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. II(a)(2), Art. V(c)(6).[1] The district court found that the Gallups did not violate their regulatory or common law duty to mitigate their damages following Flood I because the mitigation measures available to them were either prohibitively expensive or would not have prevented the damage caused by Flood II. The district court found that there was no "direct physical loss" to the Gallups' residence following Flood I, as required for recovery under the SFIP. See SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. I. The district court found that following Flood II the Gallups' home "was either a constructive total loss because the house was not safe to live in, or the loss was the cost of moving it." The district court noted that the Gallups' architect had estimated that it would cost around $85,000 to move the home to a safer location

---

[1] All citations are to the 2000 version of the SFIP in effect at the time of the Gallups' loss. See Gallup v. Omaha Prop. & Cas. Ins. Co., 434 F.3d 341, 344 (5th Cir. 2005).

following Flood I. The district court awarded the Gallups $85,000 because it found that the home could still be moved after Flood II, and this was "the fairest, most economical way to try to implement . . . the spirit and purpose of the flood program" and was "preferable to finding this a total loss." Omaha appealed the $85,000 judgment, and the Gallups cross-appealed, claiming that they should have been awarded their policy limit of $210,000. The Gallups also appealed an evidentiary order and an order denying their motion to amend their complaint to include a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

## II. STANDARDS OF REVIEW

In an action tried without a jury, we review the district court's factual findings for clear error. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1174 (5th Cir. 1992). We interpret the language of the SFIP de novo. McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999); Sodowski v. Nat'l Flood Ins. Program of Fed. Emergency Mgmt. Agency, 834 F.2d 653, 655 (7th Cir. 1987). We review the district court's decisions regarding the admission of expert testimony and its denial of the Gallups' motion for leave to amend their complaint for abuse of discretion. S&W Enters. v. Southtrust Bank of Ala., 315 F.3d 533, 535–36 (5th Cir. 2003); Reliance Ins. Co. v. La. Land & Exploration Co., 110 F.3d 253, 257–58 (5th Cir. 1997).

## III. DISCUSSION

A. Flood I Loss

We affirm the district court's factual finding that there was no covered damage following Flood I, because we do not think this conclusion is clearly erroneous. See U.S. Gypsum Co., 333 U.S. at 395. The SFIP only covers "direct physical loss" to the insured dwelling. SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. I. The evidence in the record, particularly the photographs of the Gallups' home,

support the conclusion that the only damage after Flood I was exposure of the concrete footings supporting two of the pilings upon which Building B stood. Although there was conflicting evidence at trial as to the structural integrity of Building B after Flood I, weighing the credibility of conflicting witness testimony is the responsibility of the district court. United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1346 (5th Cir. 1994). The district court's finding that there was no direct physical loss to the Gallups' home after Flood I was not clearly erroneous, and we affirm. See Peavey Co., 971 F.2d at 1174.

B.      Duty to Mitigate

(1)      Duty to Mitigate under the SFIP

We affirm the district court's legal conclusion that after Flood I the Gallups did not breach their duty to mitigate damages under the SFIP. The district court correctly found that the SFIP duty to mitigate was not implicated by the facts here. The SFIP mitigation provision states:

> D. We do not insure for direct physical loss caused by directly or indirectly by . . .
> 4. Water, moisture, mildew, or mold damage that results from any condition: . . .
> > b. That is within your control, including but not limited to: . . .
> > > (3) Failure to inspect and maintain the property after a flood recedes.

SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. V(D)(4)(b)(3). The district court concluded that this mitigation provision did not apply to the Gallups because it concerns water and mold damage, which are not at issue in this case. We therefore affirm the district court's conclusion that the Gallups did not breach this section of the SFIP.

(2)      Duty to Mitigate under Federal Common Law

5

The district court also correctly found that the Gallups did not breach the common law duty to mitigate because the measures they could have taken to prevent further damage to their home following Flood I were either prohibitively expensive or insufficient to have prevented the damage from Flood II. The Gallups had a duty to mitigate their damages under the general principles of insurance law which govern the SFIP. Hanover Bldg. Materials, Inc. v. Guiffrida, 748 F.2d 1011, 1013 (5th Cir. 1984) (stating that disputes under the National Flood Insurance Act of 1968 "are resolved under federal law by drawing upon standard insurance law principles"). Under standard insurance law principles, mitigation is "the duty of insureds to do all that they reasonably can to minimize the loss." COUCH ON INSURANCE § 168:9. Because the duty to mitigate is a common law duty, it exists "in the absence of an explicit policy provision or statutory provision imposing such a duty." Id. § 168:11. Thus, although the mitigation provision in the SFIP does not apply to this case, the Gallups still had a common law duty to take reasonable steps to mitigate their damages.

The district court found that the mitigating measures available to the Gallups following Flood I were not reasonable. The district court found that it was not reasonable for the Gallups to bulkhead the riverbank because this measure was prohibitively expensive compared to the value of the house.[2] The district court also found that moving the home after Flood I, which would have cost over $85,000, was too expensive to be a reasonable mitigating measure. The district court evaluated the testimony of the witnesses for both sides and found that other mitigating measures, such as the dirt and concrete fill proposed by

---

[2] The Gallups investigated the possibility of bulkheading prior to Flood I, and they stated that National Resource Conservation Service ("NRCS") estimated that it would cost over $270,000 to protect their home using bulkheading.

Omaha following Flood I, would not have prevented the damage which occurred in Flood II.

In Real Asset Management, Inc. v. Lloyd's of London, this Court held that the plaintiff insured's recovery should be reduced to the extent that he failed to take reasonable temporary measures, such as putting up a tarp, to prevent further damage to a building whose roof had been destroyed. 61 F.3d 1223, 1230 (5th Cir. 1995). This Court held that "[t]he defendant bears the clear burden to show what extent of [the] damages should be mitigated" and remanded the case to determine what part of the damages could be attributed to the plaintiff's failure to mitigate. Id. Real Asset is not binding upon us here because it applies Louisiana law, not Federal common law, but it is instructive on two points. First, the "reasonable" mitigation efforts required of the Real Asset insured included inexpensive and temporary measures like putting up a tarp, rather than expensive, permanent measures like re-roofing the building. Id. The district court's finding that costly long-term solutions like bulkheading or moving the whole house were not reasonable mitigation measures is consistent with this holding. Second, the Real Asset court required the insurer to show that the insured's failure to implement these reasonable mitigation measures caused additional damage. Id. Here, the district court found that Omaha had not shown that there was additional damage, because the reasonable mitigation measures available to the Gallups following Flood I would not have prevented the damage from Flood II. After reviewing the record and giving due weight to the district court's evaluation of conflicting testimony regarding the efficacy of the reasonable mitigating measures available to the Gallups prior to Flood II, we find the district court did not err. We affirm the district court's finding that the Gallups did not breach their common law duty of mitigation.

## C.    Flood II Loss and Award

We affirm the district court's conclusion that the Gallups suffered a covered loss following Flood II. After Flood II, two of the pilings underneath Building B were completely undermined. Building B listed noticeably and was unsafe to use. Due to the unusual geographic and architectural features of the Gallups' home, Building B was a total loss after Flood II.[3]

Although we hold that the Gallups were entitled to recover under their policy for the damage to Building B following Flood II, we reverse the district court's award of the cost of relocating the Gallups' home. The district court erred when it used its equitable powers to fashion this award. The Gallups' recovery is limited to the terms of the SFIP. Gowland v. Aetna, 143 F.3d 951, 954 (5th Cir. 1998). We render judgment in the amount necessary to compensate the Gallups for the loss of Building B under the terms of their insurance policy.

In addition to being an equitable remedy, the district court's award of relocation costs is also specifically prohibited by the terms of the SFIP. "[T]he provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced . . . ." Id. The Loss Settlement section of the SFIP excludes recovery for building relocation.[4] SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. VII(V)(2)(b) ("If the dwelling is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the

---

[3] We note that our determination that the Flood II damage was limited to Building B is well supported by the record. Building A was a separate structure connected to Building B by only a deck. There is no evidence in the record of actual physical loss to Building A following Flood II, which is what is required for recovery under the SFIP. The district court also found that there was no physical damage to Building A after Flood II.

[4] The SFIP provides up to $30,000 for building relocation under the "Increased Cost of Compliance" section, which "pays [the insured] to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. III(D)(1). As neither party has pointed us to a state or local law requiring relocation of the Gallups' home, this section is not applicable.

dwelling had been rebuilt at its former location."). The district court's award of the cost of relocation is improper in light of this provision of the SFIP.

The Gallups' loss is determined under the "Actual Cash Value Loss Settlement" section of the SFIP because, according to the Gallups' August 28, 2003 amended Proof of Loss, the amount of insurance on their home ($210,000), was less than eighty percent of the home's full replacement value and less than the maximum available coverage ($250,000). 42 U.S.C. § 4013(b)(2) (statutory maximum coverage); SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. VII(V)(4)(a). We hold that the proper amount of recovery under the SFIP insurance contract is the amount to which the Gallups are entitled to under the proportional loss settlement provision of the "Actual Cash Value Loss Settlement" section. SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. VII(V)(4)(a)(2).

Ordinarily, we would remand this case to permit the district court to determine the cost to replace Building B and to calculate the award under the SFIP. Here, however, remand would serve little if any practical purpose. The home and the considerable acreage on which it stood were sold in 2006 for less than 50% of the property's pre-flood value. The riverbank erosion which undermined Building B has undoubtedly continued. There is little useful information that could be obtained on remand. We will therefore calculate the Gallups' recovery based on the information they and Omaha submitted to the NFIP in 2003. We realize that our method is imprecise, but the passage of time, the changed circumstances, and the state of the record combine to prevent us from calculating the exact dollar amount of the actual "cost to repair or replace the damaged part of the dwelling," as specified by the SFIP. These same factors plus the additional cost to the Gallups argue against remand for further fact finding. Given this limitation, and the fact that this case involves a unique set of circumstances which defy a perfect solution, we are satisfied that our result is fair and principled.

The November 18, 2003 National Flood Insurance Final Report submitted by independent adjuster Joel Schaefer showed that the combined area of Buildings A and B was 2176 square feet. Schaefer erroneously omitted the deck between Buildings A and B from his estimate of the total square footage of the home. See SFIP, 44 C.F.R. Pt. 61, App. A(1), Art. III(2) ("We insure against direct physical loss . . . to . . . additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall . . . .").[5] Correcting for this omission, the total square footage of the Gallups' home was 2376 square feet. Building B, which contained two bedrooms, one full bathroom, one half bathroom, a laundry room, a den, and the deck, was 1064 square feet, or 44.78% of the total area of the home. The Gallups, in their Flood II amended Proof of Loss, estimated that the "full cost to repair or replace" their home was $314,000, and we find that the cost to replace the damaged part of the home was $140,612.79, or 44.78% of the full replacement cost.[6] The Gallups are entitled to the proportion of this cost equal to the amount of insurance they actually carried ($210,000) divided by the maximum insurance available ($250,000), or 84%. After subtracting the $1,000 deductible, we render an award to the Gallups in the amount of $117,114.74 under the proportional loss settlement provision of the "Actual Cash Value Loss Settlement" section of the SFIP. SFIP, 44 C.F.R.

---

[5] The omitted deck was a rectangular area running along the inside wall of Building B and connecting to the end of Building A. The scale drawings of the Gallups' home in engineer John Garner's August 25, 2003 report show that this deck area was approximately ten feet by twenty feet. Because one whole side of the omitted deck was connected to the inside wall of Building B and thus subject to the same structural damage suffered by the rest of Building B, we include the deck in Building B's total area.

[6] The district court stated that after Flood II, the Gallups were seeking $209,000, which it incorrectly characterized as "the total replacement value of the home less the deductible." 434 F.3d at 343. The Gallups' August 26, 2003 Proof of Loss claimed $209,585 and listed the cost to repair or replace the home plus the contents as $210,585. The Gallups amended their Proof of Loss on August 28, 2003 to include a replacement cost estimate of $314,000 provided by Albert Waterson, the home's original architect.

Pt. 61, App. A(1), Art. VII(V)(4)(a)(2). The basis for the award is the SFIP contract, not this Court's equitable powers.

D.    Pretrial Orders

The Gallups appeal from the district court's order denying them leave to amend their complaint to include a Bivens claim. 403 U.S. at 395–96. The district court denied their motion because it was filed seven days prior to trial. The district court did not abuse its discretion by denying the Gallups' motion for untimeliness and we affirm. See S&W Enters., 315 F.3d at 535–36.

The Gallups also appeal from the district court's order denying their motion to designate engineer Charles Sloan as an expert witness and to submit an untimely expert report for Sloan. The district court denied the Gallups' motion because the Gallups "failed to submit any semblance of a[n expert] report prior to trial," as required by the pretrial order. This was not an abuse of discretion and we affirm. See Reliance, 110 F.3d at 257–58.

## IV. CONCLUSION

We REVERSE the judgment of the district court and RENDER JUDGMENT in favor of the Gallups in the amount of $117,114.74. We AFFIRM the district court's denial of the Gallups' motions to amend their complaint and to designate Charles Sloan as an expert witness.